# Murphy's Appeal.

A creditor of an intestate does not release the real estate of the decedent from liability by suing and obtaining judgment against the administrator alone, without joining the widow and heirs under the 34th section of the Act of 24th February 1834, where the sale of the real estate for the payment of debts takes place by order of the Orphans' Court on the application of the administrator.

The 34th section of that Act means that the judgment obtained shall not be paid by force of an execution issued thereon.

After judgment obtained against the executor or administrator, the plaintiff may issue a *scire facias* thereon against such executor or administrator, and the heirs or devisees to recover the same out of the real estate, and such heirs or devisees may make the same defence which they could have made if originally joined in the suit.

But where such judgment is obtained against the administrator alone, and a sale is about being ordered by the Orphans' Court, that court ought to allow the heirs to show, if they can, that the creditors' claim is unfounded as fully as they could in an action in which they were joined as parties.

THIS was an appeal by Margaret Murphy and others, heirs of Patrick Murphy, deceased, from a decree of the Orphans' Court of the county of *Philadelphia,* ordering the sale of the real estate

[Murphy's Appeal.]

of the said deceased for the payment of debts alleged to be owing by him at the time of his death.   The case was argued by

*Hirst,* for the appellant ; and by
*Drayton* and *T. I. Wharton,* contra.

The facts are fully stated in the opinion of the court.

The opinion of the Court was delivered by

KENNEDY, J. — Theresa Murphy, the administratrix of the deceased, being satisfied that the personal estate of the decedent was insufficient to pay all his just debts and the expenses of administration, applied first, on the 12th January 1842, as directed by the 20th section of the Act of 24th February 1834, to the Orphans' Court of the county of Philadelphia for an order to sell the real estate of the decedent, consisting of four lots of ground, numbered 1, 2, 3 and 4, as described in her petition or application, to raise money to supply the deficiency in the personal estate to pay the debts.   An order of the court was accordingly granted, under which the administratrix sold the lots Nos. 1 and 2; but the purchaser of No. 1 failing to pay the purchase money, the sale of it was not carried into effect.   On the 2d December 1842, George Alexander, in a suit brought by him against the administratrix as such for a debt due to him by the decedent at the time of his death, obtained a verdict and judgment for $802.50, besides the costs of suit.   And on the 10th of the same month the administratrix renewed her application by petition for an order of the court authorizing her to sell the three remaining lots to meet the claims therein set forth against the estate, amounting to upwards of $1200, when she had $620.99 of the estate in her hands.   In the debts of $1200 and upwards were included the debt for which George Alexander obtained judgment, and a debt of $300 due to James Enue, for which he had brought a suit and afterwards obtained a judgment; also a third owing to John M'Guire of about $100.   There being no personal estate in the hands of the administratrix to satisfy the judgment obtained by Alexander, who issued an execution thereon to December Term 1842, of the District Court of the city and county of Philadelphia, in which it had been obtained, nor a sufficient sum remaining of the money raised from the sale of lot No. 2, the District Court, upon the application of the attorney of Alexander, made an order on the 27th December 1842, directing the administratrix to apply to the Orphans' Court of the city and county of Philadelphia for an order to sell the real estate of the decedent or as much of it as should be necessary to satisfy and pay the said judgment.   The administratrix accordingly, on the same 27th December, presented a third petition to the same Orphans' Court, praying an order for the sale of the decedent's real estate.   The court, however, before making

[Murphy's Appeal.]

an order of sale, appointed an auditor to inquire into the necessity and expediency of making a sale, having regard to the moneys in the hands of the administratrix. The auditor, after examining the matter, as he conceived, that was submitted to him under the authority of his appointment, reported in favour of the necessity as also the expediency of either selling or mortgaging the real estate of the decedent or so much thereof as the court should think necessary for the payment of the debts remaining unpaid, which he stated to be $1346.50.

Margaret Murphy, one of the appellants, excepted to the report of the auditor, because he refused to permit her to examine into the justice and correctness of the debts alleged to be due to Alexander, Enue and others, who had commenced suits against the administratrix alone, without including the heirs of the decedent, and obtained judgments therefor against her. Also because the auditor erred in reporting in favour of mortgaging or selling the real estate late of the decedent, and then of his heirs for alleged debts which they had no legal opportunity afforded them of contesting. The court, however, approved and confirmed the report of the auditor, and on the 1st April 1843 made an order authorizing the administratrix to sell so much of the real estate as should be sufficient, with the balance of personal estate (meaning the money, I presume, remaining from the sale of lot No. 2) in her hands, to pay and satisfy the debts due by the intestate as stated in her petition, and that the costs and expenses of the audit be paid by the administratrix out of the assets in her hands. From this order and proceeding of the Orphans' Court the appellants appealed, and assigned the following errors:

1. That the court erred in making the order and decree of sale of the 1st April 1843.

2. In confirming the auditor's report, and in excluding the evidence offered to show that the alleged debts were not due.

The errors assigned present two questions: 1. Did Alexander, Enue and M'Guire, by suing the administratrix alone without joining or making the heirs of the decedent parties to the suits so brought, thereby release the real estate of the decedent from the liens of their respective debts or claims, if they had any? 2. If they did not thereby release the real estate from the payment of their just claims against the decedent at the time of his death, did the auditor and the Orphans' Court err in refusing to let the heirs contest and disprove the existence of those claims after judgments had been obtained for them against the administratrix?

In regard to the first question, it has been argued that the plaintiffs in the judgments obtained against the administratrix, if they intended to charge the real estate of the decedent with the payment of their respective debts, ought to have made the heirs parties thereto in the first instance, according to the express directions of the 34th section of the Act of 24th February, 1834.

By this section it is enacted that " in all actions against the executors or administrators of a decedent who shall have left real estate, where the plaintiff intends to charge such real estate with the payment of his debt, the widow and heirs or devisees, and the guardians of such as are minors, shall be made parties thereto; and in case such widow and heirs or devisees, and their guardians, reside out of the county, it shall be competent for the court to direct notice of the writ issued therein to be served, by publication or otherwise, as such court may determine by rule of court; and if notice of such writ shall not be served on such widow and heirs or devisees, and their guardians, the judgment obtained in such action shall not be levied or paid out of the real estate of such widow, heirs or devisees as shall not have been served with notice of such writ." And because the heirs were not made parties by serving the original writs issued against the administratrix upon them, the judgments obtained shall not be levied or *paid* out of the real estate of the heirs, meaning out of the real estate which descended to them from the decedent or debtor. It is evident that the meaning of the Legislature is not expressed with much precision in this section of the act; for it cannot be supposed for a moment that they could have intended, if the heirs were made parties to the suit in the manner prescribed thereby, that their real estate generally, including such as had never been derived from the debtor or decedent, should be made liable to pay the judgment in any event; yet such would seem to be the natural inference of the closing clause of the section, which declares that if the writ shall not be served in the manner thereby prescribed on the heirs, the judgment obtained shall not be levied or paid out of the *real estate of such heirs* as shall not have been served with notice of such writ; thus embracing all their real estate, from whatever source derived, and leaving the inference to be drawn that, if the writ shall have been so served on them, then the judgment may be levied or paid out of it. But the section must receive a reasonable construction, and be interpreted according to the subject matter of it, instead of adhering to the letter. The subject matter mentioned in the commencement of the section is the real estate which shall have been left by the decedent, and that is the estate which must be considered as referred to throughout the section. And it must also be construed with reference to other sections thereof, containing provisions in relation to the same matter. From which it will appear that the real estate of a deceased debtor, in the hands of his heirs, may be taken and sold for the purpose of paying his debts, without any suit being brought either against the administrator or the heirs, or to which the latter are required to be made parties. As, by the 20th section, it is enacted that " whenever it shall satisfactorily *appear* to the *executor* or *administrator* that the personal estate of the decedent is insufficient to pay all just debts, and the

[Murphy's Appeal.]

expenses of the administration, he shall proceed, without delay, in the manner provided by law, to sell, under the direction of the Orphans' Court having jurisdiction of his accounts, so much of the real estate as shall be necessary to supply the deficiency: and such real estate, so sold, shall not be liable, in the hands of the purchaser, for the debts of the decedent." The words " in the manner provided by law," in this section, have reference to the 31st, 32d, 33d and 34th sections of the act of 29th March, 1832, which authorize the Orphans' Court, on the application of the *executor* or *administrator*, setting forth that the personal estate of the decedent is insufficient for the payment of the debts, to grant an order authorizing such executor or administrator to sell the real estate of the decedent, or so much thereof as shall be necessary to supply the deficiency. And an order to this effect may be granted, it would seem, without giving any particular or special notice to the heirs or devisees of the intestate or testator, and certainly without any suit being brought for the recovery of the debts on account whereof the real estate shall be directed by the Orphans' Court to be sold by the executor or administrator. All that is required is that the executor shall have exhibited to the court a true and perfect inventory and conscionable appraisement of all the personal estate of the decedent, together with a correct and full statement of all the real estate of the same which has come to his knowledge; as, also, a just and true account, upon oath or affirmation, of all the debts of the decedent which have come to his knowledge. And the court may, if it has any difficulty or doubt as to the expediency of granting the application, appoint suitable persons to investigate the facts of the case, and to report upon the expediency of granting the application, and the amount to be raised by such sale: and, upon such report being made, the court may decree accordingly. So, by the 55th section of the same act, the Orphans' Court may send an issue to the Court of Common Pleas of the same county for the trial of facts by a jury, whenever they shall deem it expedient to do so.

　Seeing then that the real estate of a deceased debtor may be sold by his executors or administrators for the payment of his debts, under the authority of the Orphans' Court, without making the heirs or devisees of such decedent parties to the proceeding for that purpose, by serving process of any kind upon them, or giving them any special notice thereof, it is only making the expediency and reason so much the stronger, if a judgment has been obtained against them; and it would be giving a very harsh and severe construction to the 34th section of the Act of 24th February, 1834, recited above, to say the least of it, to hold, if the creditor sued the executors or administrators for the recovery of his debt, when unjustly withheld from him, without having the writ whereby the suit is commenced served upon the heirs or devisees as well as upon the executors or administrators, in the manner prescribed

VIII.—22　　　　　P

by the section, that he thereby relinquishes the lien which he has on the real estate of the decedent for the payment of his debt. For in many instances it may be the only security which the creditor has for the payment of his debt; and to give the section the construction contended for, would be making it work a forfeiture in effect to the creditor of his debt, which could not have been intended by the legislature, in opposition to what would seem to be the plain meaning of the 24th section, which limits the lien of the debts of the decedent to five years on his real estate from the time of his death, " unless an action for the recovery thereof be commenced and duly prosecuted against his heirs, executors *or* administrators." Showing thus plainly that the lien shall be continued by the commencement and due prosecution of a suit, either against the heirs *or* the executors *or* the administrators, as the case may be, within the period of five years after the decease of the debtor. For had the legislature intended that the heirs or devisees should be joined in or made parties to the suit with the executors or administrators, they would have said so by connecting the heirs or devisees with the executors or administrators in the section by the conjunction " and;" as, for instance, " unless an action for the recovery thereof be commenced and duly prosecuted against his heirs or devisees *and* the executors or administrators," &c. But *devisees* are not even named in the section, which shows to demonstration that the commencement and due prosecution of a suit against the executors or administrators alone would be sufficient to continue the lien of the debt as to them, or against their right and interest in the real estate of the decedent. But it is equally clear from the language of the section taken in connection with other sections of the Act, that it never entered into the mind of the Legislature to conceive or make the omission to serve the original process or writ on the heirs or devisees, if served on the executors or administrators, amount to a release or relinquishment of the plaintiff's lien on the real estate of the decedent for the payment of his debt. · It is expressly secured to him for a period of five years at least after the decease of the debtor, and ought not to be taken away by implication, unless clear and necessary, or by a doubtful construction. To take it away would be equivalent to a forfeiture, which is not favoured in law; and hence the section ought not to receive a construction that would produce that effect, if it be susceptible of a different one which will do injury to no one. It is clear that the only reason for making the heirs or devisees of the decedent parties to the suit with the executors or administrators, was that they might have an opportunity of defending against the claim of the plaintiff as well as the executors or administrators, so that the estate which they derived from the decedent should not be taken in execution for a debt, unless it were such as they could not defend against after a full opportunity afforded them of doing so. And when the 34th section says the

judgment obtained by the plaintiff "shall not be *levied* or *paid* out of the real estate," unless such opportunity of defending against the claim for which the judgment shall have been obtained be afforded, it must be taken to mean that the judgmeut so obtained shall not be *paid by force of an execution* issued thereon. That such is the true and fair meaning of the section is made still more manifest by the 33d section, immediately preceding, which declares that " no execution for the levy or sale of any real or personal estate of any decedent shall be issued upon any judgment obtained against him in his lifetime, unless his *personal representatives* have been first warned by a writ of *scire facias* to show cause against the issuing thereof." And having thus provided by this 33d section against the payment of a judgment obtained against the decedent in his lifetime, out of either his personal or real estate, by means of an *execution* issued thereon, without first warning the *personal* representatives, that is, the executors or administrators, by a writ of *scire facias* to show cause, if any they have, against issuing of the same, the 34th section proceeds to provide for the collecting and enforcing the payment of debts out of the real estate of the decedent by means of a judgment and *execution,* where no judgment has been obtained against the decedent therefor in his lifetime. But if a creditor who has no judgment against the debtor at or before his decease, shall proceed by suit, as the appellants have done in this case, and recover a judgment against the executors or administrators of his debtor, without making the heirs or devisees of the deceased debtor parties thereto in the first instance, there is nothing in the spirit or meaning of the 34th section or of any other part of the Act, which would seem to restrain him from suing out a writ of *scire facias* upon his judgment obtained against the executors or administrators of the decedent, warning them and the heirs or devisees to appear and show cause, if any they have, why the judgment shall not be levied or paid out of the real estate of the decedent, permitting the heirs or devisees at the same time to go behind the judgment and make any defence which it would have been competent for them to have set up in the original suit, if they had been made parties to it. Permitting them to do this would seem to be giving them all that the Legislature could have intended by the 34th section of the Act, as it leaves them without even the shadow of ground of complaint. And besides, it is giving them a much more certain opportunity of showing, if they can, that the claim of the plaintiff is unjust or does not exist, than if the executor or administrator were to proceed in the Orphans' Court, and under an authority from it have the real estate sold for want of personal assets, and out of the money arising therefrom pay the plaintiff's claim, without suffering any suit or action to be brought for the recovery of it. That this latter course may be pursued by an executor or administrator is clear, as has been shown, from the Acts of Assembly already referred to, and cer-

[Murphy's Appeal.]

tainly cannot be questioned.  Indeed it was adopted and pursued by the administratrix in this very case, in regard to the debts first exhibited to her against the estate of her intestate; and under the authority of the Orphans' Court, for the purpose of paying those debts, sold that part of the decedent's real estate No. 2, which is held by the purchaser without any objection being made, that we hear of, to his right to do so.

We have, therefore, upon a full and mature consideration of the Acts of Assembly on this subject, come to the conclusion that the appellants ought to have been permitted, before the auditor, as also before the Orphans' Court afterwards, upon his report being made to the Court, to have shown if they could that the claims for the payment of which a sale of the real estate was desired, were unjust or not well founded; in short, to have made any defence against the payment of them out of the estate of the decedent that they might have made in the actions brought against the administratrix for the recovery of them, had they been made parties thereto in the manner pointed out by the 34th section of the Act of 24th February 1834.

The report of the auditor and the approval thereof by the court, as also the order of the court made on the 1st April 1843, authorizing the administratrix to sell as much of the real estate of the decedent as should be necessary for the payment of the debts referred to in her petition, is reversed, and the record remanded to the Orphans' Court, that it may proceed therein and permit the appellants to show, if they can, that the claims or debts, for the payment of which a sale of the real estate of the decedent is asked, are not just or ought not to be paid out of the estate; and for the purpose of determining this point, to send an issue, if requested by either of the parties, to the Court of Common Pleas of Philadelphia county.