## Dean's Appeal.

1. A judgment was confessed by an administrator and an order made by the Orphans' Court for the sale of real estate of a decedent. His heirs, who· had not been parties to any of these proceedings, filed exceptions, alleging certain facts, and praying that the creditor should be compelled to prove her claim and the petitioners have an opportunity to contest the same. *Held* (reversing the court below), that upon the facts of the case the petitioners had a right to show that the claim, for which the sale was made, was unjust and unfounded and an issue should have been directed by the court to try the fact.

2. Murphy's Appeal, 8 W. & S. 165, followed

April 1st 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the decree of the Orphans' Court of *Wayne county:* Of January Term 1878, No. 241.

Appeal of John Dean and Catharine his wife, in right of said wife, from the decree of the court in the matter of the petition of Peter Walsh, administrator of James Hoban, deceased, for an order of sale of real estate of said decedent to pay debts, and from the decree of said court confirming said sale absolutely. The facts are sufficiently stated in the opinion of this court.

*E. O. Hamlin,* for appellants.—Where judgment is obtained· against an administrator alone, and a sale is about being ordered by the Orphans' Court, that court ought to allow the heirs to show, if they can, that the creditor's claim is unfounded, as fully as they could in an action in which they were joined as parties: Murphy's Appeal, 8 W. & S. 165; Weaver's Appeal, 7 Harris 417; Breil's Appeal, 12 Id. 511; Hay's Appeal, 1 P. F. Smith 58.

We submit that the court below were wrong in their holding as matter of law that the heirs were not entitled to be heard; and that the naked facts as disclosed in the exceptions filed appeal more strongly to the conscience of the court than any argument we can frame.

*G. G. Waller,* for appellee.—The confirmation of a sale is for the sound discretion of the court. If it is so manifestly wrong that this court will say that they have exercised their discretion unlawfully, then they would reverse: Haslage's Appeal, 1 Wright 440. But I apprehend this court will not reverse a decree, where they have not before them all that was introduced before the court below, because they would not be able to judge of the bearing and importance of the affidavits introduced and read but not brought up.

The only question raised by the appellants that seems to have any merit, was as to their being any debt on which to found a judgment. This the appellants chose to rest upon their ex parte

[Dean's Appeal.]

affidavit, which was met by a counter affidavit of an outside party. If it was a question of fact, then an issue might have been ordered to try it, or a rule to show cause granted, under which competent evidence might have been taken. But no issue was demanded and no rule asked for. The matter was left to the court, and being determined by the court it is as binding as if found the same way by the jury: Gibson's Appeal, 1 Casey 193.

Mr. Justice WOODWARD delivered the opinion of the court, May 6th 1878.

Taking into account all the material matter that has been brought up by this appeal, the true merits of the controversy are not only not disclosed, but they are scarcely even indicated. The evidence on which the action of the court was based, and the principles by which their judgment was guided are left to conjecture; and the proceedings below can only be dealt with in the light thrown on them by the exceptions of the appellants.

On the 2d day of April 1877, an order for the sale of the real estate of James Hoban, deceased, was granted by the Orphans' Court, on the petition of his administrator, Peter Walsh. The only debt set forth in the petition was a judgment for $3500, confessed by Walsh as administrator to Bridget A. Hoban, administratrix of Thomas Hennigan, deceased, on the 11th of December 1876. The action in which this confession of judgment was entered, was begun by an amicable agreement between the parties, filed on the 26th of November 1875. Before any step had been taken towards the collection of this claim, the administration account of Walsh had been filed and referred to an auditor; all parties had been fully heard; and the auditor's report, finding a balance of $3335.54 in the administrator's hands, had been confirmed absolutely on the 15th of September 1875. Mrs. Hoban, as administratrix of Thomas Hennigan, had been present at the hearing, and had presented various claims against Hoban's estate, but the existence of such a demand as that set up in the amicable action, and for which judgment was confessed, had not been asserted or suggested on behalf of the estate she represented.

It does not appear that the application for the order was resisted. The real estate was sold on the 3d of May 1877, to Mrs. Hoban, who purchased the first-described parcel for $25, and the second for $500. The report of the sale was made on the 12th of May 1877, and the same day exceptions were filed under the oaths of these appellants. Notwithstanding the exceptions, and without any countervailing evidence that has been produced here, the report was confirmed absolutely on the 15th of September 1877.

In the exceptions the facts which have been stated were embodied, and a history was given in minute detail of proceedings that disclosed some peculiar features. James Hoban died in September

1870, leaving a mother, two brothers and two sisters, of whom Mrs. Dean is one. He had been in partnership with Thomas Hennigan in the firm-name of Hoban & Co., up to May 1870, when Hennigan died, his sister, Bridget A. Hoban, who was the widow of a deceased brother of James Hoban, and a cousin of Peter Walsh, becoming his administratrix. After Walsh was appointed administrator of Hoban, an inventory was filed in the register's office, containing an appraisement of one-half only of the property of the firm of Hoban & Co. This inventory soon afterwards disappeared from the office, and has never since been found. After two citations had been applied for, Walsh filed his account, which was referred to an auditor in December 1874. The inquiry made by him seems to have been searching, thorough and exhaustive. An account on Hoban's books against Bridget A. Hoban of $439.97, had not been inventoried by Walsh, and the sum of $199.97 was found due on that account, and was surcharged. She had been allowed a demand against the estate for $420 for services rendered by her minor son, which was found to be "utterly exorbitant and unwarranted." Walsh claimed credit also for the sum of $220 paid to Mrs. Hoban for "board of clerks," which was rejected for want of sufficient evidence. And he claimed a further credit for $720 paid her for the "rent of a store," while the positive evidence showed that "James Hoban had occupied no store belonging to her or to her deceased husband, Patrick Hoban, for the last twelve years." In reference to the accounts "between these cousins," the auditor said that "for almost their entire amount not one particle of ground had been shown," and he was amply justified in holding that "any other claim presented by this same person should be carefully scrutinized and distinctly proved." The result of the audit, so far as the firm assets were concerned, was, that Walsh was charged with only one-half of their amount, and it was expressly reported that "he was charged with no part of the assets belonging to Thomas Hennigan." After the payment of debts, a balance of $3375.54 was found in the administrator's hands, and was distributed and paid. On the 15th of April 1875, Mrs. Catharine Hoban, the mother of the decedent, brought an ejectment against Bridget A. Hoban for the one undivided half of the second parcel of property described in the order of sale, and for that, and for mesne profits amounting to $440.84, she recovered a verdict on the 5th of May 1876. Upon the general facts set forth in these exceptions, the court were asked to refuse to confirm the sale; to require Bridget A. Hoban to prove her claim against James Hogan's estate; and to give to the exceptants the opportunity to take defence.

It can only be assumed that the court, in disregarding the exceptions, believed them to be defective or inadequate. But if the facts set forth were true, the heirs of James Hoban were clearly entitled to be heard. If, as so competent an auditor as Mr. Seely found,

Thomas Hennigan's share of the assets of the firm of Hoban & Co. never passed into the hands of Walsh, and was never applied for the benefit of James Hoban's estate, the judgment which Walsh confessed was utterly without consideration. The entire personal estate of James Hoban had been administered. Against it Bridget A. Hoban had preferred claims in a spirit that could scarcely be called exemplary, either for its moderation or its modesty, and yet no hint had been given of this demand. Collusion between her and her cousin Walsh had been found by the auditor, and the final adjustment of the administration account had been reported to and confirmed by the Orphans' Court without resistance or complaint on her behalf. If the sale stands, Bridget A. Hoban will have regained for somebody property probably equal in value to the amount found due from Walsh; she will have retained, under the auditor's finding, Hennigan's share of the firm assets; Hoban's real estate will have been lost as a penalty upon his heirs for making a successful effort to save the personal estate; and Mrs. Catharine Hoban's recovery in ejectment will have been reduced to an idle form.

It has been stated by the appellee's counsel that against the exceptions the counter-affidavit of John Hennigan was produced at the argument in the Orphans' Court. And it has been suggested by the counsel that other facts with which the court were familiar, and which had recently been brought before them, were commented upon, and probably had some weight. It is not doubted that the judge who heard the case below was governed by considerations that were entirely satisfactory to himself; but the counter-affidavit is not in the record, and the outside facts, however conclusive they might be, cannot of course be utilized to guide the judgment of this court.

At the argument here, it was urged by the appellee's counsel that the confirmation of this sale was an act over which the discretion of the Orphans' Court extended, and not, therefore, the subject of review. But the questions raised here are not within the rule of Gibson's Appeal, 1 Casey 193, and kindred authorities. The exceptions reached back not only to the validity of the decree, but to the integrity of the judgment confessed by Walsh. The legal representatives of Hoban were not participants in any action by which either the judgment or the order of sale had been obtained. They came in at the earliest moment when resistance could be available; and they had the right to show, in the words of Judge KENNEDY, in Murphy's Appeal, 8 W. & S. 165, that "the claims for the payment of which a sale of the real estate was desired, were unjust, or not well founded." An issue for a jury should have been directed by the court, if, upon hearing, a case appeared prima facie to be made out in support of the exceptions. The prayer of the exceptants was in substance for that relief. There was enough in the facts alleged to warrant the application of the rule of careful

scrutiny and distinct proof, which the auditor, in the investigation made by him, adopted and applied.

The decree of the Orphans' Court is reversed at the costs of the appellee, and the confirmation of the sale of the real estate of James Hoban, deceased, is set aside; and it is now ordered that the record be remitted for further proceedings to the said court.