## Mary Mangan's Appeal.*

Under the act of February 24, 1834, § 34, a sale of a decedent's real estate on a judgment against his administrator to which his widow and heirs are not made parties by scire facias does not devest the title of the heirs.

*NOTE.—It will be noticed in this case that the judgment upon which the sale was had was recovered subsequent to the death of the decedent. The widow and heirs, not being made parties, the proceedings were invalid.

The same rule applies where the decedent's widow is his administratrix.

It seems that creditors of decedents are not strangers to their estates, but have by law a right to intervene and require the estates to be sold, even where the widow and heirs or representatives refuse to do so.

. (Argued April 13, 1887. Decided October 3, 1887.)

January Term, 1887, No. 284, E. D., before MERCUR, Ch. J. GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeal from a decree of the Orphans' Court of Luzerne County confirming absolutely a sale of decedent's real estate for the payment of debts. Affirmed.

Before L. B. Landmesser, Esq., the examiner to whom the petition of Mary Mangan, widow and administratrix, for the sale of Michael Mangan's real estate for the payment of his debts was referred, the following facts appeared:

Michael Mangan, March 10, 1874, entered into a written contract with Charles Pugh, for the purchase of the lot of land described in the petition, for the price of $5,700, payable: $500 down; $560 November 1, 1874; $464 April 1, 1875, and the balance in semi-annual payments of $464 each, on the first day of October and April in each year until all said sum should be paid, with interest to be paid annually on the whole sum unpaid from date of contract, confessing judgment for said sum of $5,700, and waiving inquisition of real estate and the benefit of all exemption laws.

Michael Mangan went into possession of the property and made the following payments: $500, on March 10, 1874; $564.50, on November 7, 1874; $464, on April 1, 1875, and the interest to that date; and $464, on October 5, 1875.

He died intestate and insolvent July 21, 1880, seised and possessed of an equitable interest in the land, and leaving to survive him a wife, the petitioner, Mary Mangan, and the following children,—to wit, John J., Thomas F., Dennis A., Ellen, Mary, Michael, and James.

Letters of administration upon the estate were duly granted to Mary Mangan, his widow.

This is not necessary where the judgment is obtained in the lifetime of the decedent, and the scire facias is issued for the purpose of lien, or execution. Grover v. Boon, 124 Pa. 399, 16 Atl. 885; Middleton v. Middleton, 106 Pa. 252. See also Colenburg v. Venter, 173 Pa. 113, 33 Atl. 1046.

At date of the decedent's death, there was still due upon the contract $4,944.13. His indebtedness exclusive of the purchase money amounted to $11,079.14, while his personal property amounted to only $1,078.36.

G. W. Cunningham had recovered a judgment against the decedent in his lifetime, and November 4, 1881, issued a scire facias upon the judgment against Mary Mangan, administratrix. October 8, 1883, upon the verdict of a jury a judgment was entered in favor of the plaintiff, in the sum of $1,917.27.

January 8, 1881, Charles Pugh brought an action of debt upon the contract against Mary Mangan, administratrix. The summons was duly served, and January 31, 1881, judgment was entered for want of an appearance for $5,055.26. No notice was served upon the heirs.

March 8, 1881, a fieri facias issued upon the judgment in favor of Pugh, and, the administratrix having waived inquisition and exemption, the land was levied upon and sold by the sheriff, April 9, 1881, to Charles Pugh, the plaintiff, for $1,455, and a deed for the same was acknowledged by the sheriff in open court, May 9, 1881.

By deed dated May 14, 1881, acknowledged the same day, and duly recorded, Charles Pugh conveyed said land to Mary Mangan.

January 15, 1886, Cunningham issued a writ of *venditioni exponas* upon his judgment, by virtue of which the sheriff seized and took in execution the right, title, and interest of decedent in the land, and advertised the same for sale.

March 4, 1886, John Mangan, a son and one of the heirs of said decedent, presented his petition to the court of common pleas, setting forth that the personal estate of said decedent was insufficient to pay all the just demands upon his estate, and praying the court to stay the execution issued upon the judgment of Cunningham until the administratrix made application to the orphans' court for the sale of the decedent's real estate; whereupon the court of common pleas ordered the writ to be stayed, on condition that the administratrix make an application for the sale of decedent's real estate to the orphans' court on or before March 6, 1886, and further ordered that said administratrix make said application as aforesaid.

This petition was then filed, under protest, by the administratrix.

The petitioner admitted that the sale upon execution of the Pugh judgment was void as to the heirs of the decedent, but claimed that it was good as to his creditors.

It was also conceded that if no title whatever passed to the purchaser at said sale it was the duty of the orphans' court to order a sale of the equitable interest of decedent in said land for payment of debts.

The examiner stated, as follows, the law applicable to the case:

Prior to the act of February 24, 1834, a creditor could sell the real estate of a decedent upon a judgment obtained against an administrator or executor without warning to the heirs. To remedy this imperfection in the law, and also to prevent any collusion between an administrator or executor and a creditor, whereby parties interested in said decedent's estate, would be deprived of their rights, the act of February 24, 1834, was passed, and in § 34 of said act it was provided, that "in all actions against executors or administrators of a decedent who shall have left real estate, where the plaintiff intends to charge such real estate with the payment of his debt, the widow and heirs or devisees and the guardians of such as are minors, shall be made parties thereto, . . . and if notice of such writ shall not be served on such widow and heirs or devisees and their guardians the judgment obtained in such action shall not be levied or paid out of the real estate of such widow, heirs, or devisees."

That is, it shall not be levied or paid out of the real estate which descended to them from the decedent or debtor. Murphy's Appeal, 8 Watts & S. 165.

It is only by a full compliance with this act of assembly that a creditor can charge the real estate of decedent with the payment of his debt.

Pugh having brought his action on the case against the administratrix of Michael Mangan and obtained judgment thereon against her alone, and the heirs not having been warned by scire facias as is required by said act of assembly, he was prohibited from selling the real estate of said decedent, as the said act says no execution shall issue until after notice has been given to the heirs, etc., and the sale made upon said judgment without having warned the heirs, etc., is absolutely null and void and passed

no title to the purchaser. Leiper v. Thomson, 60 Pa. 177, and cases there cited; Walthaur v. Gossar, 32 Pa. 259.

Not only must there be a legal judgment but a legal execution also to make a sheriff's sale valid. Pugh having issued an execution upon a judgment against the administratrix alone, without first having given notice to the heirs, which he is prohibited from doing by said act of assembly, he stands as a purchaser at sheriff's sale under a void process, and he gets no title whatever at said sale; consequently Mrs. Mangan, the vendee of Pugh, gets no title; and the equitable title to said lands still remains in the estate of Michael Mangan, deceased, and is in precisely the same condition it was in at the instant Michael Mangan died.

The proposition advanced by counsel for petitioner that while this sale is void as to heirs, it is good as to creditors, cannot be sustained for a moment; for how can they be affected by a sale made upon a void process? Lands descend to heirs and not to administrators. Haslage v. Krugh, 25 Pa. 97.

At the instant Michael Mangan died his equitable interest passed to his heirs,—that is, they had a contingent interest therein defeasible in behalf of creditors.

When on the 20th day of July, 1880, Michael Mangan died intestate and indebted, his personal estate passed by operation of law to his administratrix, in trust primarily for creditors; and his equitable interest in said land descended to his seven heirs, subject to the jurisdiction of the orphans' court to reclaim it for purposes of conversion into money to pay debts which the personalty should prove insufficient to pay. Horner v. Hasbrouck, 41 Pa. 179.

At the moment of an insolvent's death the rights of the creditors become fixed, and they are to be regarded, not as creditors, but as equitable owners. Cairns's Estate, 13 Phila. 350.

The creditors of Michael Mangan have, therefore, such an interest in his real estate that they stand upon an equal footing with his heirs; for if it were not so the orphans' court would be stripped of its jurisdiction by said sale and the creditors would be deprived of the privilege of enjoying the fruits of a full administration of their debtor's estate.

Considerable stress was laid by counsel for petitioner upon the case of Riland v. Eckert, 23 Pa. 215, where it was held that a sale of lands upon a judgment obtained against an adminis-

trator is not void as to others than heirs and devisees, that though the latter may not be concluded by the judgment, strangers and intruders may not treat it as void on account of want of notice to the heirs.

But that is not an analogous case, for there the contest was not, as in this case, between a purchaser at sheriff's sale and a creditor of the decedent, but between the purchaser and a party setting up a title independent of any the decedent had in his lifetime, one who was not interested in the decedent's estate, either as heir or devisee or vendee of an heir or devisee, or as the creditor of the decedent.

In addition to all this Mrs. Mangan, either in her own right or as administratrix, does not stand in a position to say that the estate of the decedent has no interest in said land, and that, therefore, there is nothing that the orphans' court can order to be sold. For the very application and affidavit upon which the court of common pleas compelled her to make application to the orphans' court for sale of said lands was made by John Mangan, a son, and one of the heirs of said decedent; and it is admitted on her part that the sheriff's sale upon the judgment of Pugh against her was null and void as to the heirs.

The examiner reported the following conclusions of law:

1. The sale by Pugh upon his judgment against the administratrix alone was null and void, not only as to the heirs, but also as to creditors.

2. No title whatever to the equitable interest of the decedent in the land passed to the purchaser of said sale, and therefore Mrs. Mangan, the vendee of said purchaser, received no title to the same.

3. All that Mrs. Mangan received by her purchase from Pugh was the legal title still existing in him and the right to receive the balance of purchase money due upon his contract.

4. The orphans' court has complete jurisdiction in this matter, and it is the duty of the court to order the land to be sold for the payment of the debts of decedent.

The examiner therefore recommended that an order be granted directing the administratrix, the trustee, to sell the interest of decedent in the land described in the petition for the purpose of paying his debts, subject to the amount of purchase money due Pugh at the time of decedent's death.

Upon overruling exceptions to the examiner's report and entering a decree in accordance with his recommendation, RHONE, P. J., delivered the following opinion:

We have concluded to confirm the report of the examiner and make the following argument in addition to what he has stated. It is shown by KENNEDY, J., Murphy's Appeal, 8 Watts & S. 168, that § 34 of the act of 1834, under which this dispute arises is not clear when read literally, and hence it "must receive a reasonable construction and be interpreted according to the subject-matter of it instead of adhering to the letter," but, it seems to us that both the letter and the spirit of the act require notice from the intestate's creditors to the widow and heirs of an intestate before the land can be sold on an execution from the common pleas.

The real estate of every decedent belongs to his widow, heirs, or devisees; and hence the letter of the act cannot be complied with, in any case, without a judgment against them. No judgment against an administrator alone can be "levied or paid" out of any decedent's real estate if the letter of the act is to be adhered to, and no judicial authority has been produced or found to the contrary unless it be Riland v. Eckert, 23 Pa. 215, which we shall discuss further on.

It was decided in Leiper v. Thomson, 60 Pa. 177, that where real estate is devised to executors to sell, the widow and legatees interested in the fund are not entitled to the notice for the reason that the executor thus becomes the owner of the land for purposes of sale and because under the terms of such a will the real estate becomes converted into personalty.

The spirit of the act has been extended so as to include the alienee of an heir or devisee. Soles v. Hickman, 29 Pa. 342, 72 Am. Dec. 635.

The reasoning of all the cases under this section is twofold: First, that the land shall not be taken from its owners (the widow, heirs, or devisees) by executor, without a judgment against them; and, second, that it shall not be in the power of the personal representative of a decedent to conspire with any real or pretended creditor to sacrifice the estate. It has been said that the act "was designed to protect the estates of dead men from those collusive judgments which are sometimes concocted between faithless administrators or executors and pretended creditors;" and we see equal reason for protecting cred-

itors of a decedent from collusion between faithless administrators and the widow, heirs, or devisees of dead men. If such sales as the one in question must be allowed to stand as valid against all of the decedent's creditors, then we can conceive of no better method to sacrifice the real estate of decedents, for all bidders at such sales are bound to know that the sale would be void at the election of the heirs and widow or any purchasers from them. The widow and heirs might bid against creditors and then repudiate the sale afterwards. In all cases they would reap the fruits of the sale and keep the land too.

The result in all such cases would be that the widow and heirs would get the land at their own price, or repudiate the sale, which must inevitably jeopardize the interests of all creditors, including the plaintiff in the execution.

After a judgment against the widow and heirs, a sheriff's sale would bind all parties; and competition between bidders would prevent any sacrifice or unfairness. All parties interested would be in equal position.

It is admitted that in such cases the title of the widow and heirs would not pass; and this being so, no title could pass, for no one else has any. The interest of the creditors of an estate is not a title but a lien; and how can their lien be devested by a sale which passes no title?

There must be a judgment against the heir as such before a valid levy can be made on the land. Atherton v. Atherton, 2 Pa. St. 112.

The act means that the judgment obtained against the administrator alone shall not be paid by force of an execution issued thereon against the lands. Murphy's Appeal, 8 Watts & S. 165.

The act is a rule of action and not of lien. Sample v. Barr, 25 Pa. 457.

These are some of the *dicta* of the cases. The only adjudicated case looking toward any other conclusion than the one at which we have arrived is Riland v. Eckert, 23 Pa. 215, and yet that case decided no more than that while such a sale may be void, as between parties immediately interested, it cannot be so treated by a mere stranger to the estate.

Such a sale may not be absolutely void, but certainly is relatively void in the sense in which those terms are defined in Seylar v. Carson, 69 Pa. 81.

If the creditors of a decedent, as also all his heirs, are satis-

fied with such a sale, it may well be held that a mere stranger shall not be allowed to question it, and yet not disturb the principle or rule which we have undertaken to establish.

The question here is not whether the sheriff's sale is void or only voidable between the purchaser and the heirs, but whether it is not voidable between the purchaser and the other creditors of the decedent. The land in question either belongs to the purchaser at the sheriff's sale or his alienee, or else it belongs to the heirs as heirs, and if to the latter, it must still be subject to the debts of their ancestor. It cannot be that the whole title to the land hangs in any such balance as will permit the rights of the creditors to stand on the election of the widow and heirs alone.

The exceptions to the report of the examiner are dismissed and the report is confirmed absolutely. A sale of the interest of the decedent in the land described will be ordered on presentation of a decree by counsel. The costs of this proceeding to be paid by the exceptant.

The assignments of error specified the action of the court in ordering the sale, and in subsequently confirming it absolutely.

*John T. Lenahan* and *George S. Ferris,* for appellant.— Notice to the widow, heirs or devisees, etc., is not a statutory requisite of title independent of their interest in the land. The section referred to was only intended for the benefit of widow, heirs and devisees, and only prohibits a sale by execution of their interest without notice to them.

Formerly a sale of real estate on a judgment obtained against the administrator for a debt of the decedent without joinder of heirs, etc., would devest their interest without affording them an opportunity to contest the judgment.

To remedy this imperfection in the law, and for no other purpose, § 34 of the act of February 24, 1834, was passed. It operates solely for the benefit of widow, heirs, and devisees or their alienee,—not for the benefit of creditors. They are neither within the letter nor the reason of the act.

The mischief sought to be remedied was the danger to heirs and devisees in the negligence or collusion between the personal representatives (often strangers to them) and claimants against decedents' estates. Sergeant v. Ewing, 36 Pa. 156.

The sole object and meaning of the statute in bringing in the

heirs, is "to enable them to contest the lien or disprove the debt." They alone are within the protection of the statute or can avail themselves of it. Riland v. Eckert, 23 Pa. 215; Leiper v. Thomson, 60 Pa. 177; Shontz v. Brown, 27 Pa. 123; Murphy's Appeal, 8 Watts & S. 165; Stewart v. Montgomery, 23 Pa. 410; McLaughlin v. McCumber, 36 Pa. 14.

The requirement of notice to widow, heirs, or devisees "is not a statutory requisite of title independent of any interest of the widow and heirs." Leiper v. Thomson, 60 Pa. 177; Stewart v. Montgomery, 23 Pa. 410; and Riland v. Eckert, 23 Pa. 215.

Such sale is not absolutely void, but voidable by them alone, and by no other persons.

A sheriff's sale of decedent's lands without notice to heirs, etc., has every effect of a valid sale, except to devest their interest without their consent—and that consent may be evidenced by matter *in pais*.

Here, the widow was also administratrix, and the sheriff's sale, on the Pugh judgment against her as administratrix, passed her life interest as widow.

Where heirs have taken any benefit under the sale on judgment against the administrator alone, they are concluded. They may elect to affirm the sale, in which case it is valid. Smith v. Warden, 19 Pa. 424; Stroble v. Smith, 8 Watts, 280; Seylar v. Carson, 69 Pa. 81; Pearsoll v. Chapin, 44 Pa. 9.

This is precisely what the widow has done in the case at bar by her purchase from the sheriff's vendee.

A judgment creditor who was present at such sale as a bidder had no standing after the acknowledgment of the sheriff's deed to require a resale of the same land: (1) Because his lien was discharged by the sale; (2) because he is estopped from denying the validity of the sale he might have prevented, but encouraged and participated in. Pry's Appeal, 8 Watts, 253; Clauser's Estate, 1 Watts & S. 208; Benner v. Phillips, 9 Watts & S. 13; Act of February 24, 1834, §§ 20, 35, 36; Purdon's Digest, 530, 531, pl. 113, 114, 120; Everman's Appeal, 67 Pa. 335; Murphy's Appeal, 8 Watts & S. 168; Wilson v. Bigger, 7 Watts & S. 111; Crowell v. Meconkey, 5 Pa. 168; Adlum v. Yard, 1 Rawle, 162, 171, 18 Am. Dec. 608; Stroble v. Smith, 8 Watts, 280; Bidwell v. Pittsburgh, 85 Pa. 412, 27 Am. Rep. 662; McKnight v. Pittsburgh, 91 Pa. 273.

An administrator has an interest in the lands of his intestate.

It is upon this interest that the liens of decedent's debts attach; and a sheriff's sale on a judgment against the administrator alone passes his interest and discharges the liens.

There is a true transmission of title of land to executors and administrators so far as the same may be found necessary to pay debts and legacies. Soles v. Hickman, 29 Pa. 342, 72 Am. Dec. 635; Cairns's Estate, 13 Phila. 350.

What really vests in the heir is a title to the residuum, or in the language of our act of 1834, the "surplusage" of the estate. This is what the law casts upon the heir. It can be nothing else consistently with our system of administration and distribution. Horner v. Hasbrouck, 41 Pa. 169.

So long as debts remain for the payment of which the lands of the decedent might be taken—for so long the title of the heir remains in abeyance and secondary to the paramount title of the administrator.

*John McGahren* and *Garrick M. Harding*, for appellee, Cunningham.—A creditor who has no judgment against the debtor, at or before his decease, must, in order to make a sale of the real estate valid and effective, obtain a judgment not only against his personal representative, but likewise the widow and heirs. The law in the distribution of decedents' estates subordinates the rights of the widow and heirs to those of creditors.

As an administratrix has no interest in lands a sheriff's sale upon a judgment recovered against her as administratrix cannot devest the liens of judgment creditors regularly recovered in the lifetime of the debtor.

The creditors have no security for a proper distribution of the money realized from such a sale. The real estate goes to the heirs, subject to the payment of debts, and the personal estate to the legal representatives, consequently the sureties in an administration bond are not liable for the real estate. M'Coy v. Scott, 2 Rawle, 222, 19 Am. Dec. 640.

The levy made upon an execution issued on a judgment where this had not been done was set aside by the court in Atherton v. Atherton, 2 Pa. St. 112.

A purchaser takes no estate where this rule has been disregarded. Sample v. Barr, 25 Pa. 459; McCracken v. Roberts, 19 Pa. 395.

The sale in the orphans' court, being at John Mangan's in-

stance and for his benefit, must be presumed to have taken place with his consent; and he is estopped from saying that he did not elect to treat the execution sale on the Pugh judgment as void and ineffective. Simmonds's Estate, 19 Pa. 441.

Riland v. Eckert, 23 Pa. 215, decides that a stranger cannot assail the validity of a title acquired by a sale on a judgment against the administratrix alone, with whom the heirs are not joined.

The legal definition of stranger is a person who is not privy to an act or contract. Bouvier, Law Dict.

A judgment lien creditor of an estate is not a stranger to it in the legal sense of the term.

OPINION BY MR. JUSTICE GREEN:

We are quite clear that this case was correctly decided by the learned court below. The plain words of the act of 1834 prohibit either the levy or the payment of the decedent's debt out of the real estate of the widow and heirs, unless they have been brought in by proper notice.

In construing this act we held in McCracken v. Roberts, 19 Pa. 390, that a sheriff's sale of the real estate of a deceased person on a judgment obtained against the administrators of his estate, to which his children were not made parties, agreeably to the provisions of § 34 of the act of February 24, 1834, does not devest the title of the children. BLACK, Ch. J., said, p. 395: "It is admitted by the counsel for the plaintiff in error that the sheriff's deed to Murdoch gave him no title whatever. The want of a scire facias against the devisees was fatal."

The necessity of proceeding against the widow and heirs by scire facias after judgment against the administrator was fully pointed out in the elaborate opinion of KENNEDY, J., in Murphy's Appeal, 8 Watts & S. 165, and confirmed in Atherton v. Atherton, 2 Pa. St. 112.

In Sample v. Barr, 25 Pa. 457, we held that § 34 of the act of 1834 is a rule of action, and not of lien, that the debt must be established against the widow and heirs or devisees before it is levied on the real estate of the decedent, and that a sale without a compliance with the act in this respect will confer no title on the purchaser. Against these decisions it is of no avail to cite cases in which heirs, who have assented to, or participated in, or accepted the results of, a sale of their real estate

made upon a judgment against the administrator only, are held to be estopped from questioning the validity of the sale afterwards. All those cases depend upon their special circumstances of estoppel. There was nothing of that kind in this case. The assent of the widow to the sale under the judgment against herself as administratrix, by means of which she procured a conveyance of the title to herself, most certainly could not devest the estate of the heirs.

Riland v. Eckert, 23 Pa. 215, is of no assistance to the appellant, because in·that case the original judgment was obtained against the decedent in his lifetime; and the act of 1834 did not apply.

But WOODWARD, J., in delivering the opinion, fully recognized the cases above cited and said, speaking of the act of 1834: "It has not been applied to judgments obtained in the lifetime of the decedent, for they were not within the mischief; but wherever a title, derived through a judgment against the personal representatives, has been set up to defeat the heirs or devisees of a decedent, it has been required to conform to the statutory rule. Such were Keenan v. Gibson, 9 Pa. 249, and McCracken v. Roberts, 19 Pa. 393, and other cases, which rule that a sheriff's sale on such a judgment, where the widow and heirs or devisees have not been made parties, does not devest their title."

It is argued that the appellee in this case being only a creditor of the decedent, and not an heir, must be regarded as a stranger and therefore not in a position to invoke the benefit of the act of 1834. We cannot assent to that view. Creditors of decedents are not strangers to their estates, but have by law a right to intervene and require the estates to be sold even where the widow and heirs or representatives refuse to do so. Their claims to their debtor's estates are indeed superior to those of the widow and heirs. But in point of fact the party proceeding for the order of sale in this case is John Mangan, a son and heir of the decedent; and hence the contention has nothing to stand upon.

Decree affirmed.